THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
BENNY JOE NEWSOME, Defendant-Appellee.

Fourth District No. 4—82—0482

Opinion filed September 6, 1983.

Edward Litak, State's Attorney, of Danville (Robert J. Biderman and Michael W. Hogan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

This is an interlocutory appeal by the State from an order of the circuit court of Vermilion County suppressing statements of the defendant which were taken in alleged violation of his *Miranda* rights. The question presented for our decision is whether the defendant was in custody so as to require *Miranda* warnings precedent to on-the-scene questioning. We reverse.

At approximately 5 p.m. on April 8, 1982, two Danville police officers on routine patrol observed defendant walking in front of the Bank of Danville looking suspiciously in all directions. The officers decided to watch the defendant and pulled into a parking lot nearby. The officers next observed defendant walk into a small grocery store for a few seconds and then exit, empty handed. Defendant left the building and walked alongside the store in an alley until he reached the back of the building at which point the officers lost sight of defendant for approximately 45 seconds. When defendant reappeared he was carrying a carton of soda and walking away from the store. The officers were able to observe the checkout counter during the brief period that defendant was out of their view and noticed that he had not purchased the merchandise he was carrying. When defendant was approximately 25 yards north of the store the officers drove up the alley and stopped the squad car within five feet of him. Both officers exited the vehicle and one asked defendant for identification. The

officers then asked defendant where he had gotten the soda and defendant responded that he had purchased it at the store. The conversation then ended, defendant was placed in the back of the squad car, and the officers returned to the front of the store to ask the cashier if the defendant had purchased the soda. The cashier recognized defendant as previously being in the store but denied that any purchases had been made. The statement of defendant which was suppressed by the trial court was his response that he had purchased the soda at the grocery store.

At the suppression hearing, arresting officer Forsythe testified that when defendant was questioned he was not free to go, and that at the time he was stopped both officers knew that the defendant had not purchased the soda at the store which they could observe. Officer Forsythe related that no matter what defendant's explanation was, they were going to verify it before allowing him to leave. The other officer likewise acknowledged that they knew defendant had not purchased the soda from that store. Defendant's pretrial suppression motion alleged that the defendant was subjected to custodial interrogation without the admonitions required by *Miranda*. The trial court agreed and granted defendant's motion.

The rule of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, requires the suppression of statements made by a defendant in response to custodial police interrogation unless preceded by a statement of basic constitutional rights and a waiver of those rights. One of the important limitations of *Miranda* is that the warnings designed to secure a defendant's fifth amendment privilege against self-incrimination are not required unless the accused is subjected to custodial interrogation. As the opinion notes:

> "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. 436, 477-78, 16 L. Ed. 2d 694, 725-26, 86 S. Ct. 1602, 1629-30.

The test laid down in *Miranda* to determine if a suspect must be advised of his rights is whether the person is in custody or otherwise deprived of his freedom of action in any significant way. (384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) In considering whether a suspect is in custody, several factors are relevant, including: (1) The place of the interrogation (*Miranda*); (2) statements

or nonverbal conduct indicating an accused is not free to leave (*People v. Kennedy* (1978), 66 Ill. App 3d 267, 383 N.E.2d 713); and (3) the extent of the knowledge of the police officers and the focus of their investigation (*People v. Meddows* (1978), 67 Ill. App. 3d 995, 385 N.E.2d 765; but see *Beckwith v. United States* (1976), 425 U.S. 341, 48 L. Ed. 2d 1, 96 S. Ct. 1612). In *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870, our supreme court indicated that the inquiry should focus on the objective circumstances surrounding the interrogation to determine what a reasonable man innocent of any crime would perceive.

■ This court has also indicated that the intentions of the officers are relevant factors in deciding if defendant is in custody. In *People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 408 N.E.2d 1098, we held that it was reversible error to prevent defendant's counsel from asking the interrogating police officer whether he would have let the defendant go at the time of the initial questioning. Our opinion there indicated that the beliefs of the police officer were important considerations although not determinative of the final outcome. In *Szerletich*, the circumstances surrounding the questioning so strongly indicated that the defendant was in custody that the absence of evidence on this factor may have persuaded the trial court to decide that the defendant was not in custody at the time of the questioning.

A case cited by both parties and supportive of the State's position is *People v. Dixon* (1981), 102 Ill. App. 3d 426, 430 N.E.2d 547. There, a person was seen leaving the scene of a murder by the victim's neighbor and was pointed out to the police by the same neighbor a week later while standing in a city park. When the officer approached the defendant he began walking away. The officer then asked the defendant his name and where he lived. Defendant responded that he did not live in the area but that he had been visiting his girlfriend. He gave the officer the address of his girlfriend and upon subsequent investigation the victim's furniture was located at the girlfriend's apartment. On appeal, defendant argued that he was in custody when initially questioned and that the evidence obtained from the apartment should have been suppressed as the fruit of the illegal questioning. The appellate court rejected this argument and characterized the questioning as merely on-the-scene investigation which did not require *Miranda* warnings.

■ Defendant argues that *Dixon* is distinguishable because in that case the police did not have probable cause for arrest, as distinguished from a present claim of said probable cause. *Dixon* did not so decide, and in any event the test for determining if a suspect is in

custody is not the presence or absence of probable cause. The prosecution suggests that the police had a reasonable suspicion of criminal activity and that the stop and question were proper under the authority of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 107—14). Here, there was an articulable basis for suspecting criminal activity so that a stop and question were proper with less than probable cause to arrest, and it cannot be said that the act of the police officers was unreasonable.

Here, no theft had been reported and there were no known witnesses to the taking of the carton. Unless it can be established that a specific carton of soda pop can be identified as the merchandise of a particular store, the fact of unauthorized taking is hardly more than an unprovable suspicion. In the opinion in *People v. Lippert* (1982), 89 Ill. 2d 171, 179-80, 432 N.E.2d 605, 608, there is a substantial discussion of probable cause to arrest in the respective context of the known commission of a crime and the identity of the offender. The opinion quotes from 1 W. LaFave, Search and Seizure sec. 3.2, at 484-85 (1978), including:

> " 'Police will not continually be arresting upon a less than 50% probability of guilt, but only in limited situations where a person is found in an area where it is known a crime has recently occurred. By contrast, if the police may also arrest upon a less than 50% probability that a crime has even occurred, then this would open up the possibility that police would generally arrest persons engaged in activity which was only equivocal. The latter practice, it seems fair to assume, would result in many more intrusions into the freedom and privacy of innocent persons than would the former.' "

Here, the defendant was not placed under arrest until his response to the question introduced facts which could be verified. At the time of the question, defendant's activity was not obviously illegal. The question was asked in open public view with no display of force administered and no overt restraint upon defendant.

More closely analogous to the instant situation is *People v. Parks* (1971), 48 Ill. 2d 232, 269 N.E.2d 484. In *Parks*, a pharmacist received a phone call from the defendant, posing as a doctor, ordering a prescription. The pharmacist notified the police and shortly thereafter defendant arrived to pick up the prescription. As defendant was leaving the store, an officer asked defendant if he had made a purchase at the drug store and for whom. The defendant told the officer that he was obtaining the drugs for his aunt. On appeal, the defendant argued

that the statement he made at the pharmacy should have been suppressed as the fruit of an unlawful interrogation. The supreme court rejected this argument, holding that defendant was not in custody but was merely subjected to preliminary on-the-scene investigative inquiry. See also *People v. Helm* (1973), 10 Ill. App. 3d 643, 295 N.E.2d 78.

The questioning of the defendant here occurred in public view, the questions were asked when the officers first arrived and nothing indicates that defendant was aware that he was not free to leave. The fact that the officer testified that defendant was not free to go is not determinative since this was not communicated to the defendant. Under the objective test, an innocent, reasonable person in defendant's position would not have felt restrained. (*Wipfler.*) All the defendant was doing when he was approached by the officers was carrying an eight-pack of soda down a public way at a reasonable hour. The situation at bar is much different than the custodial environment presented in *Miranda* where the defendant had been taken into an isolated interrogation room at police headquarters for questioning.

■ Although a trial court's ruling on a motion to suppress should not be reversed unless the ruling is manifestly erroneous (*People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505), we conclude that such a standard has been met here. All the facts and circumstances indicate that defendant was not in custody with the exception of the statement by one of the officers that when defendant was stopped he was not free to leave the scene. This subjective view was never communicated to the defendant either explicitly or implicitly, and our decision in *Szerletich* did not hold that the subjective belief of a police officer is the controlling factor in deciding if a suspect is in custody.

For the foregoing reasons, the order of the circuit court of Vermilion County granting defendant's motion to suppress his statement is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

GREEN and MILLER, JJ., concur.