THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WAYNE BERRY, Defendant-Appellant.

Fourth District   No. 4—83—0664

Opinion filed May 10, 1984.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Nancy Owen, State's Attorney, of Charleston (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:
Defendant was charged with two offenses of residential burglary

(Ill. Rev. Stat. 1983, ch. 38, par. 19—3) in the circuit court of Coles County. His motion to suppress his confessions was denied and the case then proceeded to a stipulated bench trial. He was found guilty and sentenced to four years' imprisonment. This appeal followed.

The facts are not in substantial dispute. Two break-ins occurred in homes in Coles County in February and April 1983. A detective investigating the incidents was told by a neighbor that she had seen the defendant walking in the area at about the time of the April offense. He therefore determined to question defendant about the incidents.

Defendant lived with his parents in the neighborhood of the burglarized premises. He was 17 years old and attended classes in Paris, Illinois, for the educable mentally handicapped, his I.Q. being about 80. His ability to read and write and comprehend was limited; he had no prior criminal record.

The detective, Redden by name, went to defendant's house and requested him to come to headquarters. He did so later that day in the company of his mother. Redden took him to a basement room; the door was not locked, but closed with another officer stationed outside. Defendant's mother remained elsewhere in the building. Redden testified at the motion hearing that he told the defendant he was not under arrest and could leave at any time.

An interrogation followed during which defendant admitted his guilt and agreed to give a taped statement. During the interrogation defendant was questioned about an unrelated case involving another person who was a friend. He was also told that fingerprints had been found at the scenes of the burglaries and that they would be compared to his.

Later defendant gave two taped statements in the presence of his mother and the two officers. In substance, he admitted breaking into the residences. In one case he walked through several rooms and sampled a soft drink from the refrigerator; in the other, he took a cigarette lighter; in both cases he was looking for money, but changed his mind and left.

Redden testified that he knew of defendant's impairment of mind and he did not give him any *Miranda* warnings because he wanted to obtain a confession from him. He stated that he told defendant he was not under arrest in order to avoid *Miranda*.

Defendant testified that he had had no prior exposure to the police; that he had always respected the police; that he would have remained silent if he had been advised of his right to do so; and that he did believe he was free to leave but did not do so because he was afraid he would be arrested.

As indicated above, the trial court denied defendant's motion to suppress his oral and taped statements. The trial consisted only of stipulations to defendant's statement and stipulations with the owners that their homes had been entered and that they had not given defendant permission to do so.

The sentencing hearing was held some 60 days later. The trial judge indicated a preference for probation if it were a possible disposition. However, it is barred by section 5—5—3(c)(2)(G) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2)(G)).

The events must be viewed in the context of two time periods: (1) those leading up to the taped confessions, and (2) the taped confessions themselves. While the two are interrelated, it is our opinion that the former rests principally upon the voluntary nature of the oral statement, and the latter upon the lack of *Miranda* warnings. The trial court was in error as to both; the oral statement was involuntary and the taped statements should have been suppressed because they were not preceded by *Miranda* warnings. Consequently, since the trial consisted almost entirely of the taped statements, defendant's convictions must be reversed and the cause remanded for a new trial without any of the confessions as an element of evidence.

The fundamental principle governing the admission of confessions is well known: the confession must be voluntary; otherwise, it is totally inadmissible. The test to determine whether a confession is voluntary is whether the defendant's will was overborne at the time of the confession. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) This determination must be based on the totality of the circumstances and consideration must be given to both the characteristics of the defendant and the details of the interrogation. (*People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.) The State bears a heavy burden of showing that the statement was knowingly, intelligently and voluntary made. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508.) If, as here, the trial court finds that the confession was voluntary, a reviewing court's inquiry is limited to whether that finding is contrary to the manifest weight of the evidence.

It is well established that a defendant's age, education, mental capacity, emotional characteristics and experience in criminal matters are factors which must be considered by the trial court in determining the voluntary nature of a confession. *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466.

Here we have a 17-year-old adolescent, with subnormal intelligence, with little education, dependent upon his parents, lacking expe-

rience in criminal affairs but with respect for the police and what they told him.

The general rule is that subnormal mentality does not *ipso facto* make a confession involuntary as long as the defendant has the capacity to understand the meaning and effect of the confession. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466.) However, mental subnormality is a factor to be considered when determining the voluntariness of a confession, and, " '*** where accompanied by other factors indicative of an absence of voluntariness, will require that the confession be excluded.' " *People v. Hester* (1968), 39 Ill. 2d 489, 500, 237 N.E.2d 466, 474.

In the present case, defendant's subnormal mentality was accompanied by his young age, lack of education, and complete lack of experience in criminal matters, all suggestive of an increased susceptibility to coercion and intimidation. When confronted with such a defendant, the greatest care must be taken to assure that a confession was voluntary and that it was not the "product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Gault* (1967), 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458; see also *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.

The details of the initial interrogation militate strongly against the State. No impropriety existed in the request of the defendant to present himself at headquarters. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) However, after his arrival he was isolated from his mother, who accompanied him, and it is undisputed that he was not accompanied by an attorney. Police conduct thereafter borders on deception. He was interrogated about an unrelated offense concerning an acquaintance; it was intimated that his fingerprints might have been found at the scene of the break-ins; the officer testified that it was his avowed intention to obtain a confession. It was not until after the officer had suggested that latent prints had been found that defendant made his oral statement. There is no credible evidence that defendant knew the nature of latent prints, even if they had existed.

In short, the totality of the circumstances here indicate to us that this vulnerable defendant could not have made a voluntary statement in the light of the intimidating, coercive and deceptive atmosphere of the interrogation.

We turn next to the taped statements which were taken after the oral one. Again it is undisputed that no *Miranda* warnings were administered; indeed, the direct testimony of the officer is that *Miranda* was circumvented deliberately; the inquiry then becomes whether defendant was "in custody" within the meaning of *Miranda*. We be-

lieve that he was.

The determination of whether an interrogation is custodial should focus on the objective circumstances surrounding the questioning and what a reasonable man innocent of any crime would perceive. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) To aid in this determination, there are several factors that should be considered, including: (1) the place of the interrogation; (2) statements or nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the law enforcement officers and the focus of their investigation; and (4) the intentions of the officers. *People v. Newsome* (1983), 117 Ill. App. 3d 1005, 454 N.E.2d 353.

In the present case the interrogation took place in a basement interrogation room at the Coles County sheriff's department. While Detective Redden stated that defendant was free to leave, nonverbal conduct indicated the contrary was true. Specifically, the door to the basement room was closed, an officer was stationed outside of the door, and defendant was separated from his mother who had transported him to the sheriff's department. While the extent of the officer's knowledge was unclear at the time of the initial interrogation, it is obvious that after defendant's initial oral confessions and before he was requested to give the taped confessions, the officers knew that he had probably committed the crimes. They could have placed him under arrest at that time and a reasonable man would have known this. Finally, the officers stated that they intended to release the defendant at all times during the interrogation and confessions. However, this intent must be judged in light of Redden's statement that defendant was told he was not in custody in order that Redden would not have to give him the *Miranda* warnings. The circumvention of the requirements of *Miranda* appears to have been the officer's primary intent here.

We believe that this case presents a clear picture of an officer attempting to turn a custodial interrogation into a noncustodial one by repeating a litany that the defendant was free to leave. It is apparent that even one of defendant's mentality would have felt the opposite; he knew that he had made an oral confession; it belies all human experience to say that in that posture the authorities would lose interest in the case. *Miranda* warnings should have been given. The purpose and flagrancy of official misconduct are apparent. *People v. Smith* (1980), 91 Ill. App. 3d 438, 414 N.E.2d 1281, *rev'd on other grounds* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325.

The taped confessions should have been suppressed. The trial court's admission of them was against the manifest weight of the evi-

dence.

Defendant has also presented two subsidiary arguments which may be dealt with summarily. First, he asks that his convictions for residential burglary be reversed and that the State's Attorney be directed to charge him with the newly created offense of criminal trespass to residence. (1983 Ill. Laws 7342.) We have no such power over the prosecutorial discretion of a State's Attorney. *People v. Poll* (1979), 74 Ill. App. 3d 534, 393 N.E.2d 732; *People v. Gibson* (1976), 41 Ill. App. 3d 209, 354 N.E.2d 71.

Second, defendant argues that the residential burglary statute is unconstitutional as applied to him and asks this court to reduce his sentence. Suffice it to say, the contention was not raised below and, in any event, it is the prerogative of the legislature to fix penalties and to define sentences. The argument is without merit.

For all the foregoing reasons, defendant's convictions are reversed and the cause is remanded to the circuit court of Coles County for a new trial in accordance with the views expressed in this opinion.

Reversed and remanded for new trial.

MILLS, P.J., and TRAPP, J., concur.