133 Ill. App.3d 946 (1985)
479 N.E.2d 1084
In re B.R., a Minor (The People of the State of Illinois, Petitioner-Appellant,
v.
B.R., Respondent-Appellee).
No. 83-3059.
Illinois Appellate Court  First District (1st Division).
Opinion filed June 10, 1985.
Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Frenzer, and Phillip J. Bartolementi, Assistant State's Attorneys, of counsel), for the People.
James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellee.
Judgment affirmed.
PRESIDING JUSTICE McGLOON delivered the opinion of the court:
After the State filed a petition for adjudication of wardship against the minor-respondent predicated upon his alleged commission *947 of aggravated battery, the trial judge granted the respondent's motion to suppress both the gun allegedly used in the crime and his confession. The State now appeals that ruling, which was based on a finding that the police failed to give the respondent his Miranda warnings prior to a custodial interrogation. The State contends first that the questioning did not constitute a custodial interrogation; second, that the evidence was admissible as a "public safety exception" to the Miranda rule; and third, that the confession was voluntary under the totality of the circumstances.
At the hearing on the respondent's motion to suppress, three Chicago police officers, as well as the respondent, testified. The police officers testified that they were investigating a double shooting that occurred on October 31, 1983, in Chicago. On the day after the shooting, one of the officers received a telephone call stating that the respondent had "knowledge" of the shooting and also possessed a small handgun that he was displaying to other members of his street gang. That evening, the police officers went "specifically" to look for him at a known gang hangout. After they found the respondent with a number of gang members, one of the officers asked him if he had heard about the shooting. When the respondent said that he had, one of the officers said he wanted to talk about it to him. The respondent then stepped away from the group and got into the back seat of the parked and unlocked police car; the officers' testimony was ambiguous as to whether the respondent simply did not want to talk in front of the group, or whether the police wanted to question him in private. Two of the officers then sat in the front seat, while one officer sat in the back with the respondent. Their conversation lasted between 5 and 10 minutes; the officers said that they did not draw their guns, and that the respondent was not handcuffed, threatened, physically abused or arrested. He was not given his Miranda warnings, and all three officers questioned him.
The officers further testified that the respondent was told that they had heard that he was "right there" when the shooting occurred and that they wanted the gun "off the street" so no one would be hurt. When told he could "only hurt [him]self by lying," and asked about the shooting, the respondent then stated that he had heard his gang was responsible, but that he did not know who actually had done the shooting. He also described the gun and, in answer to the officers' request, said he would find it if they gave him some time. The officers agreed to return in 30 to 45 minutes, and the respondent then left the car and walked back to his group. The officers testified that the purpose of this initial interrogation was to get the gun off the street and *948 to find out who had done the shooting. They said they knew the respondent's home address.
When the officers returned, they called the respondent, and he returned to the back seat of the police car, from which he directed them to a location where they retrieved the gun. After he was then asked who had done the shooting, he gave them four names, including those of three fellow gang members. However, when the officers said they were going to question these individuals, the respondent stated that he did not want to get his friends into trouble and confessed. He then was arrested and given his Miranda rights.
The respondent, who was 15 years old at the time he was questioned, testified that the police initially told him to get into the car, and then threatened him verbally, saying they "could do this the easy way or the hard way," telling him they would "kick his ass," and mentioning sending him "to St. Charles" if he did not tell them what they wanted to know. He stated that this questioning took about half an hour. When the police returned, he said that he again was told to get into the car. After the gun was recovered, he stated that he confessed when the officers did not release him and told him that no one was shot, and that the crime was only simple rather than aggravated battery. He further stated that he did not receive his Miranda warnings, never felt free to leave the car during the questioning, and was not told by the officers that he could leave; nor could he have left the car because he was "boxed in" on both sides by an officer and by books beside him, and he believed he was under arrest. He explained that he cooperated because he was afraid and did not know what was happening; his friends had been beaten by the police under similar circumstances; the police had become angry and yelled at him; he felt cooperating by getting the gun would keep him from being beaten; and he knew the police could have located him had he failed to wait for their return, since they had his home address.
In rebuttal, the officers denied making any threats, and denied telling the respondent no one had been shot, though admitting that he was told no one was seriously injured.
Before granting the respondent's motion to suppress his statements and the gun because the State had not proved that his statements were voluntary or that he was given Miranda warnings, the trial judge discussed the applicable case law in detail and then made a lengthy finding of fact. He found that the interrogation was custodial rather than a general on-the-scene investigation; the respondent was a suspect who would not have reasonably believed himself free to leave the squad car; and he should have been given Miranda warnings *949 both before and after the gun was recovered.
 1 Initially, the State asserts that the trial judge erred in concluding that because the questioning of the respondent was custodial rather than investigative and consequently Miranda warnings need not have been given here. We cannot agree with this argument. Here, it is clear that, particularly given his age, the respondent's presence in the police car with three officers with all the doors closed after dark was a significant deprivation of his freedom of action. (See People v. Burson (1980), 90 Ill. App.3d 206, 412 N.E.2d 1160),[1] rather than mere general on-the-scene questioning or fact-finding. (See People v. Gan (1979), 75 Ill. App.3d 72, 394 N.E.2d 611.) The police admitted that they went "specifically" to talk with the 15-year-old respondent because of the telephone tip, and there is no question that they interrogated only him out of all the gang members initially present. According to his testimony, he was told to enter the squad car where the three police officers told him that they knew he was "right there" at the scene of the shooting. The officers said he would hurt himself by lying and also told him that they wanted him to get the gun before anyone else was hurt. Then, after the police initially released him and he directed them to the location of the gun upon their return, they again kept him in the back seat of the car, rather than releasing him, until he eventually confessed. The respondent testified that he did not feel free to leave the squad car, and that he cooperated and confessed because he was afraid, since the police had yelled at and threatened him, and he knew his friends had been beaten under similar circumstances.[2] Under these circumstances, there was sufficient evidence to support the trial judge's determination that the respondent was a suspect who was significantly deprived of his freedom during a custodial interrogation in which he was threatened and psychologically coerced, did not reasonably feel free to leave, and confessed out of fear. Thus, we cannot say that the ruling of the trial judge, who heard and observed the witnesses, that the respondent was entitled to Miranda warnings  both before, and certainly after, the gun was recovered  was so manifestly erroneous as to be reversed upon review (see People v. Reynolds (1983), 94 Ill.2d 160, 445 N.E.2d 766; Rhode Island v. Innis (1980), 446 U.S. 291, 64 *950 L.Ed.2d 297, 100 S.Ct. 1682), especially given the fact that the respondent here was only 15 years old. See People v. Simmons (1975), 60 Ill.2d 173, 326 N.E.2d 383; cf. People v. Savory (1982), 105 Ill. App.3d 1023, 435 N.E.2d 226, and People v. Wipfler (1977), 68 Ill.2d 158, 368 N.E.2d 870.
 2 Second, we find no merit in the State's assertion that the evidence here was admissible as a "public safety" exception to the Miranda rule. Even if we assume for the sake of argument that the State has not waived this argument by failing to raise it at the hearing on the motion to suppress, the "narrow exception" set forth in New York v. Quarles (1984), 467 U.S. ___, 81 L.Ed.2d 550, 104 S.Ct. 2626, clearly is inapposite here. The extreme exigent circumstances in that case, where police had a very "limited time" to act instinctively to neutralize a "volatile situation" and so avert immediate danger to the general public, and so were relieved of the duty to give Miranda warnings, obviously were not present here.
 3 Finally, we must reject the State's argument that the respondent's confession here, under the totality of the circumstances, was voluntary. As the respondent correctly points out, the "totality of the circumstances" test for whether a confession is voluntary comes into play only if it is determined that the accused originally has been given his constitutionally mandated Miranda warnings. (See People v. Jordan (1980), 90 Ill. App.3d 489, 413 N.E.2d 187.) And, in any event, it is clear from his findings that the trial judge correctly determined that the respondent's confession here was not voluntary, given the totality of the circumstances surrounding the police failure to inform him of his Miranda rights.
Accordingly, the judgment of the circuit court is affirmed.
Judgment affirmed.
CAMPBELL and O'CONNOR, JJ., concur.
NOTES
[1] In this context, we also note that the fact that the respondent was later permitted to leave to locate the gun does not necessarily establish that he was not in custody initially. See, e.g., People v. Zach (1979), 77 Ill. App.3d 17, 395 N.E.2d 758. See also People v. Kennedy (1978), 66 Ill. App.3d 267, 383 N.E.2d 713.
[2] At one point during the hearing, the trial judge specifically indicated that he saw no motive other than "fear" for the respondent to cooperate.