159 Ill. App.3d 320 (1987)
512 N.E.2d 132
In re N.E.R., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
N.E.R., Respondent-Appellant).
No. 4-86-0706.
Illinois Appellate Court  Fourth District.
Opinion filed August 18, 1987.
Supplemental opinion filed on denial of rehearing September 1, 1987.
*321 *322 Daniel D. Yuhas and Richard D. Frazier, both of State Appellate Defender's Office, of Springfield, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Reversed and remanded.
PRESIDING JUSTICE SPITZ delivered the opinion of the court:
A petition for adjudication of wardship was filed in the circuit court of Champaign County, alleging that minor respondent, N.E.R., had committed the offense of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12-16(c)(2)). Thereafter, respondent moved to suppress statements he had made to a police officer during an interrogation. The motion to suppress was denied after a hearing. Following subsequent adjudicatory and dispositional hearings, respondent was found to be a delinquent minor for committing the offense of aggravated criminal sexual abuse, adjudicated a ward of the court, and sentenced to the Department of Corrections, Juvenile Division. Respondent now appeals contending that (1) the trial court erred in denying his motion to suppress; (2) he was not proved guilty of aggravated criminal sexual abuse beyond a reasonable doubt; and (3) the trial court erred in committing him to the Department of Corrections, Juvenile Division. For the reasons that follow, we reverse and remand.
 1-4 Respondent first contends that the trial court erred in failing to suppress his admission because he was "in custody" and the interrogating officer failed to advise him of his Miranda rights; his admission was not voluntary; and he was "unlawfully seized" in violation of the fourth amendment. The State contends that the respondent made a voluntary statement to the police officer while being questioned in a noncustodial setting and, thus, the motion to suppress was properly denied.
The instant record reveals that one witness, Officer Robert Doty, was called to testify at the hearing on respondent's motion to suppress. Doty, an investigator for the Champaign County sheriff's department, testified that on April 15, 1986, he had a conversation with respondent at respondent's home in Champaign. Doty went to the respondent's home that day to inquire about allegations of sexual abuse by the respondent. He was "fairly familiar" with the victim's entire story.
According to Doty, when he got to respondent's home he knocked on the door and first spoke with respondent's mother. Doty then *323 spoke with respondent in the doorway, on the front porch of the home. Doty told respondent that he wanted "to talk" and asked whether respondent would "sit in the car and talk." Doty stated that respondent "said he would be willing to."
Doty testified that he chose to speak with respondent in his car for "privacy [sic] sake." The nature of the allegations was such that Doty felt it "would be difficult for [respondent] to be able to speak * * * honestly about if [they] tried to talk in front of [respondent's] family, or in a room in [respondent's] house."
Doty's unmarked squad car was parked in front of respondent's house. Doty did not recall physically touching respondent as respondent entered the right front passenger seat of the squad car. Doty may have locked the door when he shut it but was not certain. Doty testified that once they were seated in the car, he explained to respondent why he wanted to talk to him, but that he did not tell respondent he could leave the car.
When Officer Doty first began questioning respondent about the alleged incident, respondent denied all of Officer Doty's allegations. Doty "didn't think [respondent] was being truthful" and told respondent so. After this, respondent "did then admit to telling [Doty] that he had done some things." Doty testified that he also spoke to respondent about a polygraph test. Doty explained:
"Essentially when you talk to individuals in similar circumstances I asked if they understood what a polygraph examination is or a lie detector test. If he would be willing to take one. They would pass or fail, and if they said they didn't know how they would do, I would say, well, if you tell the truth, you will pass. If you don't tell the truth, you will fail it."
When asked whether he told respondent that he would physically take him to a polygraph examiner, Officer Doty responded, "No, I don't believe I did." After the interrogation had ended, Doty "told [respondent] that he wasn't under arrest, and [Doty] didn't have any plans to arrest him." Doty then went to the house, got respondent's mother, brought her back to the car and told her what respondent had told him.
The questioning began at 4:10 p.m. and ended at approximately 6:15 p.m. At no time during questioning did Doty advise respondent of his Miranda rights. Doty testified that he summarized what respondent had told him during the interrogation in his three-page report. Doty was not questioned at the hearing about the substance of respondent's statements.
After hearing arguments, the trial court denied the motion to suppress, *324 finding that the questioning session was not a custodial interrogation and, therefore, Miranda warnings were not required.
In Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, the United States Supreme Court held that in order to safeguard the privilege against self-incrimination, Miranda warnings must be given to any defendant subject to custodial interrogation. The Miranda court defined a "custodial interrogation" as questioning initiated by law enforcement officers after a person has been taken into custody or has otherwise been deprived of his freedom of action in any significant way. 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602.
Illinois courts presented with this issue have held that the determination of whether an interrogation is custodial should focus on the objective circumstances surrounding the questioning and what a reasonable man innocent of any crime would perceive. (People v. Wipfler (1977), 68 Ill.2d 158, 368 N.E.2d 870.) To aid in this determination, there are several factors that should be considered, including: (1) the place of the interrogation; (2) statements or nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the law enforcement officers and the focus of their investigation; and (4) the intention of the officers. (People v. Berry (1984), 123 Ill. App.3d 1042, 463 N.E.2d 1044; People v. Newsome (1983), 117 Ill. App.3d 1005, 454 N.E.2d 353.) The burden of proving that a defendant was not in a custodial situation and had not been deprived of his freedom of action in any significant way is on the State. (See People v. Zach (1979), 77 Ill. App.3d 17, 395 N.E.2d 758.) The trial court's determination will not be disturbed on appeal unless that determination is contrary to the manifest weight of the evidence. People v. Berry (1984), 123 Ill. App.3d 1042, 463 N.E.2d 1044.
 5 We have applied these principles to the case at bar and conclude that the trial court's decision to deny the motion to suppress was contrary to the manifest weight of the evidence. An examination of the evidence relative to the factors enunciated by this court in People v. Berry (1984), 123 Ill. App.3d 1042, 463 N.E.2d 1044, reveals that the interrogation was custodial in nature and, consequently, Miranda warnings should have been given.
First, we see that the place of the interrogation was Officer Doty's police car. Respondent was seated in the police car with Doty. Respondent was unaccompanied by a parent or an attorney. Further, the doors to the squad car were closed and possibly locked. Courts presented with situations similar to the instant one have determined that such a setting is custodial rather than investigative. For example, the court in In re B.R. (1985), 133 Ill. App.3d 946, 479 N.E.2d 1084, determined *325 that a 15-year-old respondent's presence in the police car with police officers with all the doors closed after dark was a significant deprivation of his freedom of action rather than mere "general on-the-scene questioning or fact finding." Similarly, in People v. Burson (1980), 90 Ill. App.3d 206, 412 N.E.2d 1160, the court held that the defendant's presence before a uniformed police officer in a squad car in which all of the doors were closed was a significant deprivation of his freedom. Furthermore, in People v. Kennedy (1978), 66 Ill. App.3d 267, 277-78, 383 N.E.2d 713, 722, the court stated:
"After the pat down, the defendant was asked to enter [the] squad car. He was told he would be on his way as soon as the results from NCIC cleared him. Additionally, the only way he could exit the squad car was to kick out a rear window. These facts strongly suggest that the defendant was not free to leave while in the squad car * * * [and] that he was in custody during this time period * * *."
Additionally, Federal courts presented with circumstances such as those here have determined that such a setting indicates that the accused faced "significant restraints" (United States v. Scharf (9th Cir.1978), 608 F.2d 323) and could have reasonably concluded that he was not free to leave (United States v. Lee (9th Cir.1982), 699 F.2d 466).
Thus, in light of these decisions and the particular facts at hand, we conclude that the instant interrogation was custodial rather than investigative. Our conclusion is strengthened by an analysis of the remaining three factors enunciated in Berry.
These factors include the nonverbal conduct of the officer indicating the accused is not free to leave; the extent of the knowledge of the law enforcement officer and the focus on his investigation; and the intention of the officer. (People v. Berry (1984), 123 Ill. App.3d 1042, 463 N.E.2d 1044.) A review of Doty's testimony reveals that it was not until the end of the two-hour interrogation that Doty informed respondent he "was not under arrest." Further, Doty testified that he may never have told the respondent he was free to leave. The record from the suppression hearing reveals the following testimony by Doty:
"PROSECUTOR: And, did you tell him when you were finished talking that he could be free to leave, and go back to his house?
DOTY: Perhaps not in those words. Essentially that when I got done with the conversation I wasn't going to take him with me anywhere."
In addition, Doty testified that he was "fairly familiar" with the victim's *326 "entire story," which implicated the respondent. The evidence strongly suggests that the investigation was focused entirely upon the respondent.
We believe the evidence established that the respondent was a suspect who was significantly deprived of his freedom during a custodial interrogation and that he did not reasonably feel free to leave. Thus, Miranda warnings should have been given. For these reasons, we conclude that the trial court erred in failing to suppress the statements made by the respondent.
 6 Because our decision that the trial court erred in failing to allow the respondent's motion to suppress requires a reversal of the adjudication and a remand for a new adjudicatory hearing, we need not address the remaining contentions advanced by the respondent, in this appeal. We deem it advisable, however, to comment on one additional aspect of the case, that being the testimony of the complainant in this case. We note that the six-year-old complainant's testimony was elicited totally by leading questions. Nearly all of her responses were either "yes" or "no." Many of these responses were only given as the result of great prodding and came only after significant pauses. We are mindful that it is clearly within the discretion of the trial court to allow counsel to lead a child of tender years during direct examination. (See People v. Server (1986), 148 Ill. App.3d 888, 499 N.E.2d 1019 (and cases cited therein).) Here, however, the prosecutor's excessive use of leading questions led to little, if any, credible testimony actually being elicited from the complainant. Rather, the sum and substance of the testimony was presented through the questions of the prosecutor. The overuse of leading questions should be avoided in any future proceedings in this cause.
In view of our foregoing analysis, we reverse the adjudications of delinquency and wardship, vacate the disposition, and remand the case to the circuit court of Champaign County for a new adjudicatory hearing with directions that the respondent's statements be suppressed.
Reversed and remanded with directions.
LUND and KNECHT, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
PRESIDING JUSTICE SPITZ delivered the opinion of the court:
 7 Respondent, N.E.R., has filed a petition for rehearing requesting *327 that we reach the question of whether the evidence adduced at the adjudicatory hearing was sufficient to establish his guilt beyond a reasonable doubt. In view of the mandate of the supreme court in People v. Taylor (1979), 76 Ill.2d 289, 391 N.E.2d 366, that this question be addressed when raised and an appellate court reverses a criminal conviction and remands the cause for a new trial, we now consider the issue.
Upon consideration, we believe that the evidence adduced at trial was sufficient for the trial court to conclude that respondent was guilty beyond a reasonable doubt. This does not mean we are making a finding as to his guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting respondent to double jeopardy. See People v. Taylor (1979), 76 Ill.2d 289, 391 N.E.2d 366; People v. Johnson (1987), 116 Ill.2d 13, 506 N.E.2d 563; People v. McGhee (1987), 154 Ill. App.3d 232, 507 N.E.2d 33; People v. Schulz (1987), 154 Ill. App.3d 358, 506 N.E.2d 1343; People v. Lopez (1987), 152 Ill. App.3d 667, 504 N.E.2d 862.
In accordance with the views expressed in our original and supplemental opinions, the judgment of the circuit court of Champaign County is reversed; this cause is remanded for further proceedings; and the petition for rehearing is denied.
Reversed, remanded, and petition for rehearing denied.
LUND and KNECHT, JJ., concur.