THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK A. FASSE, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRADLEY D. HANING, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMIE EVANS, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK E. GILMORE, Defendant-Appellee.

Fourth District   Nos. 4—87—0839 through 4—87—0842 cons.

Opinion filed September 13, 1988.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Paul R. Welch and Dawn L. Engel, both of Costigan & Wollrab, P.C., of Bloomington, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendants were charged with consuming alcoholic liquor while under the age of 21. (Ill. Rev. Stat. 1985, ch. 43, par. 134a.) Defendants filed motions to suppress their admissions based upon a purported violation of the principles set forth in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The circuit court suppressed the admissions. The People appeal, contending the circuit court's determination that a custodial interrogation occurred is contrary to the manifest weight of the evidence.

We vacate the suppression order and remand.

On May 31, 1987, Scott Stuart, a police officer for the Village of McLean, and Brian Sparrow, a McLean County deputy, investigated a matter at Olympia High School. While at the high school, Stuart told Sparrow he had noticed a car coming out of the area near the Sugar Creek Bridge. The officers drove separate vehicles to the area. While patrolling, Sparrow noticed a large gathering of vehicles. He and Stuart observed a vehicle leave a farm field. Stuart stopped the automobile, which contained persons who stated they had been drinking at a party near the creek. They were under 21 years of age, had approximately a case of beer in their vehicle, and accompanied the officers back to the party.

Sparrow stated a large group of people were sitting around a fire when the officers arrived. Eight to ten persons were drinking some beverage. At the time he observed the group from his vehicle, he could not determine which persons were drinking beer and which persons were drinking pop. Containers for alcoholic beverages were scattered around the group. Several persons started running. Sparrow admonished the persons fleeing but did not pursue them.

Sparrow stated there was no question in his mind that the law was being violated when he left his vehicle. He recognized some of the individuals from high school wrestling. Sparrow asked whether anyone in the group was over 21 years of age. No one responded. Sparrow then told the youths to split into two groups, those who had been drinking and those who had not been drinking. He smelled the breaths of those who were in the nondrinking group and released them. The drinkers were arrested. No one was free to leave until the officers had determined who was drinking alcoholic beverages. He did not advise any suspect of his *Miranda* rights.

Stuart testified that he saw about 20 youths sitting around a fire and beer cans in the area. No one was free to leave until he and Sparrow investigated the gathering. It was dark and he could not determine which persons were drinking alcoholic beverages. No arrests were made until after the drinkers had been separated from the nondrinkers. The balance of Stuart's testimony supported Sparrow's testimony.

Defendants argue the admission inherent in stepping into the "drinking group" should be suppressed because the youths had not been advised of their *Miranda* rights and because the State failed to produce three material witnesses to the admission. The circuit court found that the testimonial act of stepping into the drinking group was inadmissible. It declined to rule on the material witness argument.

■ In *Miranda*, the Court stated that prior to custodial interrogation an accused must be advised that he has a right to remain silent, any statement may be used against him, and he has the right to the presence of an attorney, either retained or appointed. Custodial interrogation was defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in a significant way. (*Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706-07, 86 S. Ct. at 1612.) The Court cautioned that its decision was not meant to hamper the traditional function of police officers in investigating crime. Therefore, it stated that general on-the-scene questioning as to the facts surrounding a crime or other general questioning was not affected by its holding. The Court noted that the compelling atmosphere inherent in custodial interrogation is not necessarily present in an on-the-scene investigation. *Miranda*, 384 U.S. at 477-78, 16 L. Ed. 2d at 725-26, 86 S. Ct. at 1629-30.

■ In *Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138, the Court held that statements made in response to questions during a traffic stop were admissible. The Court addressed two issues, the protections of *Miranda* to a person subjected to custodial interrogation and the admissibility of self-incriminating statements made prior to formal arrest. The Court acknowledged that the driver was not free to leave when stopped for an alleged traffic violation; however, it determined such questioning was generally not custodial in nature but that:

"[T]he typical traffic stop is public, at least to some degree. *** This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." (*Berkemer*, 468 U.S. at 438, 82 L. Ed. 2d at 334, 104 S. Ct. 3149.)

"Although Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. *** [T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." (*Berkemer*, 468 U.S. at 442, 82 L. Ed. 2d at 336, 104 S. Ct. at 3151.)

The Supreme Court in *Berkemer* further stated:

"Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him

reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' [Citation.] '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' [Citation.] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. *** [P]ersons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." (*Berkemer*, 468 U.S. at 439-40, 82 L. Ed. 2d at 334-35, 104 S. Ct. at 3150.)

The determination of when an interrogation becomes custodial in nature depends upon the facts of each case.

A trial court's determination that an interrogation is custodial in nature for purposes of a suppression motion will only be reversed when it is contrary to the manifest weight of the evidence. (*People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628; *People v. Newsome* (1983), 117 Ill. App. 3d 1005, 454 N.E.2d 353.) A determination of whether an interrogation is custodial should focus on the objective circumstances surrounding the questioning and on what a reasonable man innocent of any crime would believe. (*In re N.E.R.* (1987), 159 Ill. App. 3d 320, 512 N.E.2d 132.) Factors to be considered include: (1) the place of the interrogation; (2) statements or conduct indicating an accused is not free to leave; (3) the extent of the law enforcement officer's knowledge and the focus of his investigation; (4) the intention of the officer; (5) whether the accused has family or friends present, the number of police officers present, and the manner of interrogation; (6) whether the interrogation takes place after any formal indicia of arrest; and (7) the age and intelligence of the suspect. *Hagar*, 160 Ill. App. 3d 370, 513 N.E.2d 628; *N.E.R.*, 159 Ill. App. 3d 320, 512 N.E.2d 132; *People v. Finklea* (1983), 119 Ill. App. 3d 448, 456 N.E.2d 680.

■ No one factor is determinative. The fact that an accused is suspected of wrongdoing does not render on-the-scene questioning custodial in nature. (*People v. Newsome* (1983), 117 Ill. App. 3d 1005, 454 N.E.2d 353; *People v. Dixon* (1981), 102 Ill. App. 3d 426, 430 N.E.2d 547.) Additionally, the mere fact that an accused is not free to leave during the investigation is also not determinative of its

nature. *Berkemer*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138.

■■ In the instant case, two officers confronted a group of approximately 20 youths at the scene of an out-of-doors party in a public place. The officers knew members of the group were under 21 years of age and that some members of the group had been drinking beverages containing alcohol. However, neither officer could tell which persons had been drinking liquor prior to investigating further. None of the members of the group were free to leave prior to the investigation, but none asked to leave and those who ran were not pursued. No coercion was used during the questioning. The circumstances presented here are not analogous to those presented in *Miranda* and its progeny. There was little chance that the youths were coerced into making statements and little evidence of police overbearing. The circumstances are analogous to those presented in *Berkemer*. We note as did the Court in *Berkemer* that the principles enunciated in *Miranda* should not be extended to situations where the concerns which gave rise to *Miranda* are not involved.

■■■ Defendants urge this court to affirm the circuit court's decision because the State failed to produce material witnesses to the statements. Contrary to the defendants' assertion, the witnesses suggested by the defendant are not material witnesses within the context of the rule. In *People v. Jennings* (1957), 11 Ill. 2d 610, 615, 144 N.E.2d 612, 615, *cert. denied* (1958), 356 U.S. 904, 2 L. Ed. 2d 581, 78 S. Ct. 564, the supreme court stated:

> "Where, as here, there is evidence that a confession has been extorted from an accused, the prosecution is required, if feasible, to produce every police officer and every other person connected with taking the confession in order to ascertain whether it was voluntary."

Other Illinois cases have held that all persons who had control over the defendant or connected with the taking of the defendant's statement should be called as witnesses. (*People v. LaCoco* (1950), 406 Ill. 303, 94 N.E.2d 178, *cert. denied* (1951), 340 U.S. 918, 95 L. Ed. 663, 71 S. Ct. 348; *People v. Spranger* (1924), 314 Ill. 602, 145 N.E. 706.) The witnesses alluded to by the defendants had neither control nor authority over the defendants nor did they have anything to do with the taking of the statements of the defendants or the statements made by the defendants. They did not fall in the category of material witnesses required to be produced by the State at the motion to suppress. The material witness rule simply does not apply in this instance. (*People v. McClure* (1976), 43 Ill. App. 3d 1059, 358 N.E.2d 23.) Additionally, the issue in this appeal, *Miranda*, concerned state-

ments made by defendants.

For the above reasons, we vacate the circuit court's suppression order and remand for further proceedings consistent with this disposition.

Vacated and remanded.

GREEN, P.J., and LUND, J., concur.