THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL DAVIS, Defendant-Appellant.

Fourth District   No. 4—88—0723

Opinion filed November 9, 1989.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorney's Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On July 22, 1988, defendant Michael Davis was found guilty by the circuit court of Sangamon County, following a stipulated bench trial, of the offenses of murder and armed robbery. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), 18—2(a).) He was subsequently sentenced to 20 years' imprisonment. He now appeals, alleging the court improperly denied his motion to suppress various statements he made to the police. We affirm.

On September 12, 1986, defendant and Rodney Johnson were charged by information with committing the murder and armed robbery of J.S. Defendant gave the police several separate statements concerning his involvement in the offenses. These statements were given on July 30, July 31, August 1, August 15, and August 16, 1986. These statements commenced being entirely exculpatory and concluded with that of August 16 implicating defendant in the crimes. On June 2, 1987, defendant filed a motion seeking to suppress these statements, alleging they were not voluntarily given and that defendant was not properly advised of his *Miranda* rights. At the conclusion of the hearing, the trial court found the statements were voluntarily given but, finding defendant could not understandably read the written statements he signed, the court suppressed these written statements. The State appealed, and this court determined the written statements were admissible and remanded the case to the trial court. See *People v. Davis* (1988), 166 Ill. App. 3d 1016, 520 N.E.2d 1220.

Upon remand, the parties agreed to proceed to a stipulated bench trial. Defendant renewed his motion to suppress the statements. The court, relying on its earlier ruling, denied it. After reviewing the stipulated evidence, which is made up in large part of defendant's state-

ments, the court found defendant guilty. Defendant's sole allegation is that his motion to suppress was improperly denied.

The State's evidence at the motion to suppress hearing established that on July 30, 1986, defendant, then 15 years of age, and Rodney Johnson had been apprehended for committing the offense of retail theft. Juvenile detective Daniel Hughes, who had known defendant for some time, was processing paperwork for the prosecutor's office and was preparing to release defendant when defendant asked if they would let him go in return for some information concerning a murder. Defendant stated he saw a third person kill a "white dude" by striking him in the head with a brick. At that time, Hughes, being unfamiliar with the particulars of the crime, called Detective Don Kolar, the primary investigating officer, to speak with defendant.

Kolar and Hughes viewed defendant strictly as a witness at that time. Therefore, defendant was not read his *Miranda* rights. Defendant told Kolar and Detective Don Stouffe that he saw the victim come up to Auggie Johnson at a local bar. They left and went to an alley where defendant saw Johnson hit the victim in the head with a brick and take his wallet.

The next morning Kolar and Detective Thomas Mann picked defendant up at his home and brought him to the station to interview him. They had his mother's permission. Defendant was still perceived as a witness and was not advised of his *Miranda* rights. The statement given was reduced to writing and signed by defendant. It was a more detailed account of the July 30 statement. The detectives then went to the scene of the crime and discovered defendant could not have viewed the crime from his asserted location.

Therefore, on August 1 at around 10 a.m., Kolar, Mann, and juvenile detective Tom Marvel brought defendant to the station for another interview. This time, defendant was read his *Miranda* rights. As each one was read, he was asked if he understood it, and he responded affirmatively. He then agreed to talk to them. Defendant repeated his earlier statement and was released. At this time, the detectives began viewing defendant as a suspect.

Around 4 p.m. that day, defendant was brought to the jail by Rodney Johnson at the behest of the police. Defendant was also accompanied by his stepfather, Gary Jackson. After they explained a discrepancy between his statement and the crime scene, defendant explained he had "snuck up" the alley and was in a different position when he viewed the crime. This conversation lasted two hours.

On August 15, Kolar and Mann took defendant, with his mother's permission, to a polygraph examination. After the examination, they

took him to the station. On the way, he was advised of his *Miranda* rights, which defendant waived. Juvenile detective Frank Kress joined them at the station. Defendant was confronted with the polygraph result and the discrepancies in his statements. He asked if they could promise him anything. He then wanted assurance that if he was only a witness rather than a participant, he would not be prosecuted. He was taken to speak with an assistant State's Attorney and told that if he was only a witness, he would not be punished but, if he was a participant, he would be. Defendant then gave a statement to the effect that he saw Rodney Johnson kill the victim with the brick. The police then interviewed Johnson, who implicated defendant.

Accordingly, defendant was reinterviewed on August 16 in the presence of Kolar, Mann, and juvenile detective Ralph Harris. Again, defendant was advised of and waived his *Miranda* rights. This interview lasted two to three hours. Defendant admitted going up to the victim with Johnson and taking the victim's wallet, but insisted that Johnson struck the victim with the brick. They then fled with the wallet.

All the police testified defendant was not threatened, physically abused, or promised anything for his statements. It also appeared to Kolar that defendant understood what was happening at each interview.

Defendant presented evidence from his teacher at the detention center, the behavior disorder research teacher at the high school, and the school psychologist. This established that in 1986, the results of the Gates-McGinitie Achievement Test showed defendant's reading comprehension and job vocabulary were mid-first to second-grade, eighth-month, level. Defendant's full scale IQ was 61. Defendant was classified as behaviorally disordered and educably mentally handicapped.

One teacher observed that defendant was capable of carrying on a normal conversation with her, and she did not observe him having trouble communicating with anyone else. The other noticed that defendant could relate events that occurred to him outside school in an understandable fashion.

Defendant's stepfather, Gary Jackson, testified that when he came with defendant to the police station, defendant stated that he was helping police with the investigation into this crime. Jackson encouraged defendant to be as helpful to the police as possible.

Defendant testified that after his polygraph examination on August 15, the police told him he failed and was being taken to the police station. At no time during that trip was he advised of his

*Miranda* rights. He also did not believe he could leave at any time he wanted. Further, he was not advised of his *Miranda* rights on August 16.

Defendant acknowledged being given the *Miranda* warnings in his other dealings with the police. He also explained that he understood what those rights are.

The trial court found the statements were voluntarily made. It found defendant was advised of his *Miranda* rights when it was required, and he knowingly waived them. It also found that the *Miranda* warnings were not required to be given on any day prior to August 16 since defendant was not in custody.

Initially, defendant, observing that *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, applies to exculpatory as well as inculpatory statements (see *People v. Holmes* (1977), 53 Ill. App. 3d 856, 861, 368 N.E.2d 1329, 1333), argues the statements of July 30 and 31 should have been inadmissible since he was not advised of his *Miranda* rights prior to making the statements.

■ The rule of *Miranda* requires the suppression of statements made by a defendant in response to custodial police interrogation unless they are preceded by a statement of basic constitutional rights and a waiver of those rights. (*People v. Newsome* (1983), 117 Ill. App. 3d 1005, 1007, 454 N.E.2d 353, 355.) Only statements made as a result of a custodial interrogation must be preceded by *Miranda* warnings. *People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785, 792; *Newsome*, 117 Ill. App. 3d at 1007, 454 N.E.2d at 355.

Defendant maintains, concerning the July 30 statement, that he was in custody on the retail theft charge at the time of the interrogation, and he was, therefore, entitled to those warnings. (See *Mathis v. United States* (1968), 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503.) However, the evidence establishes otherwise. Defendant and Johnson were in the process of being released when they offered to speak of the crime. By the time defendant spoke with Kolar, the paperwork was completed and the juvenile authorities released him to go home.

■ Defendant next contends that on both July 30 and July 31, he was in custody for *Miranda* purposes. The test laid down in *Miranda* to determine if a suspect must be advised of his rights is whether the person is in custody or otherwise deprived of his freedom in a significant way. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 168, 368 N.E.2d 870, 874; *Newsome*, 117 Ill. App. 3d at 1007, 454 N.E.2d at 355.) In considering whether a suspect is in custody, several factors are relevant, including: (1) the place of the interrogation; (2) any statement or

nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the police officers and the focus of their investigation; (4) the intentions of the police; and (5) the objective circumstances surrounding the investigation to determine what a reasonable man innocent of any crime would perceive. *Romano*, 139 Ill. App. 3d at 1009, 487 N.E.2d at 792; *People v. Berry* (1984), 123 Ill. App. 3d 1042, 1046, 463 N.E.2d 1044, 1048.

■ In applying these factors, it is evident defendant was not in custody. Defendant originally broached the subject, indicating he was a witness to the crime. Both times he was interviewed as a witness. On July 30, it was superficially and, on July 31, it was done in greater detail. At this time, the police had no reason to think of defendant as a suspect. Defendant was free to leave at any time. Admittedly, the conversations took place at the police station, but this factor alone does not make this a custodial situation. A reasonably innocent person in similar circumstances would not have considered himself in custody.

Defendant makes a similar argument concerning his second interview on August 1, noting he was not given the *Miranda* warnings. Again, this argument must fail. Defendant was still being viewed as a witness by the police. In fact, they did not go get him but asked Johnson to tell defendant to come in. Defendant came voluntarily with his stepfather. Stepfather testified that defendant told him defendant was helping the police with the crime. A reasonable person would not believe he was in custody, and no warnings were required.

■ The fact defendant was advised of these rights prior to the earlier August 1 interview does not affect this determination (see *Wipfler*, 68 Ill. 2d at 170-71, 368 N.E.2d at 875), nor does the fact the police had become suspicious of defendant due to the inconsistencies in his statements. The United States Supreme Court, when confronted with a situation where a defendant's freedom to depart at the time of the statement was not restricted, he appeared voluntarily and he knew he was not under arrest, stated:

> "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. *Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda* warnings are required only where there has been such a re-

striction on a person's freedom as to render him 'in custody.' It was *that* [emphasis in original] sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." (Emphasis added unless otherwise noted.) *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714.

Defendant next argues the statements of August 1, 15, and 16 should be suppressed since the State failed to establish they were given voluntarily.

▬▬ The test to determine if a statement or confession is voluntary is whether it was made freely, voluntarily, without compulsion or inducement, and whether the accused's will was overborne at the time he confessed. (*People v. Hester* (1968), 39 Ill. 2d 489, 497, 237 N.E.2d 466, 472-73; *In re T.S.* (1986), 151 Ill. App. 3d 344, 350, 502 N.E.2d 761, 765.) This determination is based on the totality of the circumstances. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606.) Consideration must be given to both the characteristics of the accused and the details of the interrogation. (*People v. Simmons* (1975), 60 Ill. 2d 173, 179, 326 N.E.2d 383, 386.) Factors to be considered include the age, education, and intelligence of the accused, the duration of the questioning, any police deception, and whether he received his constitutional rights. (*In re T.S.*, 151 Ill. App. 3d at 350, 502 N.E.2d at 765.) Also considered are the accused's mental capacity, emotional characteristics, and experience in criminal matters. (*Hester*, 39 Ill. 2d at 497, 237 N.E.2d at 473.) The trial court, in making its determination, need not be convinced beyond a reasonable doubt. (*Prim*, 53 Ill. 2d at 70, 289 N.E.2d at 606.) The court's finding that a statement is voluntary will not be reversed unless it is against the manifest weight of the evidence. *People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228, 234; *Wipfler*, 68 Ill. 2d at 172, 368 N.E.2d at 875-76.

We have no such difficulty with the present case. The evidence establishes, despite defendant's testimony to the contrary, that defendant was advised of his *Miranda* rights prior to each questioning. It further established that defendant understood these rights. Defendant acknowledged on the stand that he understood what the rights meant. Finally, the evidence shows he knowingly waived these rights.

▬ Defendant insists that his low intellectual level requires a finding that the statements were involuntary. While mental subnormality is a factor to be considered, it does not *ipso facto* make a confession involuntary. (*Hester*, 39 Ill. 2d at 500, 237 N.E.2d at 474.) Here, the police testified defendant understood what was transpiring

and was communicative with them. Defendant's teachers observed that, while his academic functioning was low, he was able to communicate better about events that involved him than academic or hypothetical situations. The evidence also establishes that defendant was familiar with the criminal justice system. In fact, he understood well enough to initiate bargaining with the police on July 30, and then to inquire as to the possible penalties if he was only a witness. Finally, the court had a chance to observe defendant testifying, and found that he was able to respond directly and appropriately to questioning, which is recognized as an important factor in determining whether defendant's mentality impaired his ability to understand and waive his constitutional rights. See *People v. Padilla* (1979), 70 Ill. App. 3d 406, 411, 387 N.E.2d 985, 988-89.

■ Defendant maintains the police misled him by explaining if he was only a witness, he would not be prosecuted, and by not telling him he could be prosecuted as an adult. However, a defendant's confession is not rendered involuntary because he may not have understood the principles of criminal accountability and the implications of the acts admitted. (*Martin*, 102 Ill. 2d at 427, 466 N.E.2d at 235.) Similarly, the circumstance that an accused is a juvenile does not require that he be advised he may be prosecuted as an adult before he may knowingly waive his right to remain silent. *People v. Prude* (1977), 66 Ill. 2d 470, 476, 363 N.E.2d 371, 373.

■ We recognize that special care must be taken when determining the voluntariness of a minor's waiver of rights. (See *Wipfler*, 68 Ill. 2d at 171, 368 N.E.2d at 875.) In the case at bar, the court reviewed in great detail the appropriate factors and rendered a well-reasoned decision. The record establishes this determination was not against the manifest weight of the evidence.

Affirmed.

SPITZ and GREEN, JJ., concur.