THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SOLOMON FINKLEA, Defendant-Appellant.

Second District   No. 81—704

Opinion filed November 10, 1983.

Earl Washington and Joshua Sachs, of Chicago, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Solomon Finklea, appeals his conviction for murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1) in the circuit court of Winnebago County on the basis that his incriminating statements were elicited in violation of his constitutional rights when he was not informed during police interrogation that an attorney retained to assist him was present and wished to see him. Because the trial court did not err in finding that defendant was not in custody during that interrogation, however, we affirm.

On the morning of November 17, 1980, Loretta Fricks was found dead in her Rockford apartment, which she shared with defendant and their son. A subsequent autopsy revealed that the deceased died from asphyxia due to manual strangulation. That same morning, defendant was questioned about the death by police at the police station. While he was there, an attorney who said that he was retained by defendant's family to assist defendant appeared at the station, but was refused access to defendant by police. In response to police questioning, defendant gave incriminating statements which were later used at trial. After a hearing, defendant's pretrial motion to suppress the statements was denied. After a jury trial, defendant was convicted of murder and sentenced to 20 years' imprisonment, from which judgment he now appeals.

Defendant's sole contention on appeal is that his fifth amendment right to silence and his sixth amendment right to counsel were violated by an in-custody interrogation by police without permitting him to communicate with an attorney retained for him by his family. The challenged interrogation resulted in incriminating statements by defendant which the prosecution used at trial.

■ We note initially that defendant's sixth and fourteenth amendments right to counsel is not truly at issue here. That right does not arise until the commencement of adversary judicial criminal proceedings (*Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232; *People v. Smith* (1982), 93 Ill. 2d 179), a circumstance clearly not present here. Although defendant cites *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, which found a sixth amendment violation when the police during interrogation denied the defendant's request for an opportunity to consult with his attorney, that case has since been viewed more accurately as a decision designed to protect the fifth and fourteenth amendments privilege against self-incrimination. (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882; *People v. Smith* (1982), 93 Ill. 2d 179, 189.) The opinion in *Smith*, upon which defendant relies for the proposition that it was a constitutional violation for the police to deny access to him by the attorney retained to represent him, was predicated solely upon the fifth and fourteenth amendments; the supreme court there refused to consider the correctness of the appellate court's analysis in terms of the general sixth amendment right to counsel. 93 Ill. 2d 179, 185.

■ ■ Although defendant was read his constitutional rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, he contends that the rule of *Miranda* was violated by the police when they continued to interrogate him without informing him of the presence of an attorney retained by his family to represent him. However, the rule of *Miranda* applies only to questioning initiated by law enforcement officials after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) The decision in *People v. Smith* (1982), 93 Ill. 2d 179, the case which defendant argues compels a holding that the police conduct here violated his constitutional rights, was an elaboration on the waiver component of the rule of *Miranda*. *Smith* held that when the police, prior to or during a *custodial* interrogation, refused an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the fifth amendment right to counsel during interrogation if the suspect has not been informed that the attorney was present and asking to consult with him. (93 Ill. 2d 179, 189.) Thus, it is essential that we first determine whether defendant was in fact in custody during the challenged interrogation.

■ ■ In determining whether a statement was made in a custo-

dial setting, a court must look to all of the circumstances surrounding the questioning, with no single factor deemed controlling, and then objectively evaluate whether a reasonable, innocent person would have believed that he was free to leave or was expressly or impliedly bound to remain in the presence of police. (*People v. Wipfler* (1977), 68 Ill. 2d 158; *People v. Savory* (1982), 105 Ill. App. 3d 1023, 435 N.E.2d 226; *People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.) Numerous factors are to be considered in the inquiry: the location, time, length, mood and mode of the interrogation; the number of police officers present and the presence or absence of friends or family of the accused; any *indicia* of formal arrest of the subject including physical restraint, show of weapons or force, booking, fingerprinting or informing the person he is under arrest; the manner in which the person questioned got to the place of interrogation, *i.e.*, voluntarily on his own, in response to a police request, or on a verbal command indicating compulsion; whether he voluntarily assists police in their interrogation; whether the subject is allowed to walk within and from the location of the interrogation unaccompanied by police; and the age, intelligence, and mental makeup of the accused. *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1028, 435 N.E.2d 226, 230, and cases cited therein; see Annot., 31 A.L.R.3d 565 (1970).

The following specifics were adduced at the hearing on defendant's motion to suppress. On the morning of November 17, 1980, defendant was brought to the police station in a police van by two police officers, at least one of whom was uniformed. He testified that he was told at the apartment that he was not under arrest but that the police wanted to question him about the death of Loretta Fricks. At the police station, defendant was questioned by two different policemen on and off between 9:01 a.m. and 12:39 p.m. During the questioning, defendant and both policemen were seated and the police used a normal speaking tone of voice. Throughout the questioning, only defendant and Officers Oldenburger and Bland were present. None of the *indicia* of formal arrest were employed: there was no physical restraint, show of weapons or force, booking, or fingerprinting. No handcuffs or other restraints were used. Both defendant and Officer Bland testified that defendant was informed during the questioning that he was not under arrest. He was not told that he was under arrest until later in the afternoon when the results of the autopsy were received, long after his statements had been given. Defendant was read his *Miranda* rights, signed a waiver form, and gave two statements which were typed and which he signed. In the second of those statements, defendant admitted grabbing the deceased by the

throat while they were tussling, after which she lay motionless. Defendant was permitted to go to the bathroom and was offered food and drink. Between the two statements, he was left alone in the interview room. After each statement, he was permitted to make a phone call. The police testified that defendant was free to leave at any time during the morning questioning. Defendant was 34 years old, could read English, had an 11th grade education and had worked some complicated assembly line tasks at a Chrysler plant.

■■■ Viewed objectively, these facts support the trial court's finding to the effect that a reasonable, innocent person of defendant's age and intelligence would not have believed that he was bound to remain in the presence of the police under the circumstances recited. Defendant emphasizes that he was the "target" of the investigation. However, the United States Supreme Court has held that the focus of a suspicion is not the test for the applicability of the *Miranda* procedures, but rather *Miranda* applies only to *custodial* interrogations. (*Beckwith v. United States* (1976), 425 U.S. 341, 48 L. Ed. 2d 1, 96 S. Ct. 1612; see *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711.) The fact that police suspicions may have shifted during the course of the interrogations does not render the situation a custodial one. (*People v. Miller* (1980), 91 Ill. App. 3d 1031, 415 N.E.2d 538.) While defendant was interrogated at the police station and was read his *Miranda* rights, these facts do not *per se* render the interrogation custodial. (*People v. Wipfler* (1977), 68 Ill. 2d 158; *People v. Reed* (1982), 104 Ill. App. 3d 331, 432 N.E.2d 979; *People v. Sanders* (1981), 103 Ill. App. 3d 700, 431 N.E.2d 1145.) Nor do these facts in conjunction with the fact that defendant was driven to the police station by police officers determine that defendant was in custody. (See *Reed; Sanders.*) Rather, we rest our conclusion that the trial court's finding was not error upon the fact that defendant was informed more than once that he was not under arrest *and* there was nothing in the objective behavior of the police that should have dispelled the belief of the defendant that he was free to leave.

Having decided that a reasonable, innocent person would not have believed that he was under restraint, it is unnecessary for us to determine the intent of the officers. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 167.) We note, however, that to the extent that the police refusal to permit the attorney to communicate with defendant at the police station is relevant to the custody determination, it relates to the intention of the officers and not to defendant's objective understanding of his status.

■■ Since defendant was not in custody, *Miranda* does not apply.

Defendant has not cited authority, and we can find none, for the proposition that incriminating statements resulting from *noncustodial* interrogation by police must be excluded if the accused has not been informed that an attorney retained to assist him is present and wishes to see him. While we do not mean to condone the police conduct in this case, defendant has failed to show how that conduct compels the exclusion of his statements. We hold that defendant's motion to suppress his incriminating statement was properly denied and evidence of the statement was properly admitted at trial. Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.