THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MERVI SMITH, Defendant-Appellee.

Second District No. 2—85—0813

Opinion filed December 11, 1986.—Rehearing denied January 8, 1987.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Briscoe, of Will & Briscoe, Ltd., of Waukegan, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a suppression hearing, the circuit court of Lake County suppressed a written confession made by defendant, Mervi Smith, based upon its finding that she was in custody at the time of the statement but had not been advised of her *Miranda* rights. The State appeals, contending defendant was not in custody when she gave the written statement.

On the morning of December 3, 1984, a fire at defendant's residence in Lake County caused the death of James Henderson, defendant's boyfriend. That same day, Detective Michael Blazincic of the Lake County sheriff's department called defendant and requested she come to the department to make a statement. Defendant agreed and was driven to the police station at 9 a.m. the following morning by a friend, Joanine Champlin. Defendant proceeded to an office in the Investigations Division with Detective Blazincic and Detective Charles Fagan while Miss Champlin remained in the lobby. The office was a small windowless room containing a desk and three or four chairs. The door to the room was open throughout most of the interview.

Approximately 1½ to 2 hours later, defendant admitted she was responsible for the fire. Soon after, the officers then contacted the State's Attorney's office and were informed that they did not yet have to advise defendant of her *Miranda* rights. The officers continued to discuss the fire with defendant and later told Joanine Champlin that the interrogation would be quite lengthy. Miss Champlin left the station and the detectives told defendant they would drive her home later. After defendant was provided with a lunch at noon, she made a verbal confession regarding her responsibility for the fire and, at the request of the officers, commenced writing a detailed statement which she completed at approximately 9 p.m. Defendant was then driven to her home by Detective Blazincic in an unmarked car and dropped off. She was not under arrest at the time and sat in the front seat without handcuffs.

On December 6, 1984, defendant was arrested and on being advised of her *Miranda* rights for the first time, she invoked her right to remain silent and requested an attorney. On December 21, 1984, defendant was charged by indictment with two counts of aggravated arson (Ill. Rev. Stat. 1983, ch. 38, par. 20—1.1) and one count of arson (Ill. Rev. Stat. 1983, ch. 38, par. 20—1(a)). Defendant's attorney moved to suppress defendant's oral and written statements and on September 13, 1985, a suppression hearing was held.

At the suppression hearing, Detective Blazincic testified that he was not in uniform on December 4, 1984, and that he had advised defendant several times that she was not under arrest and could leave at any time. At the start of the interview, he told defendant that he was aware she was behind in her mortgage payments. After defendant gave him her account of the fire, and he had informed her that it contradicted the account she had given the fire department investigators, defendant then stated she was responsible for the fire. Officer Blazincic testified he did not threaten defendant in any way or make any promises to her.

Blazincic testified further that he and Detective Fagan again advised defendant that she was free to leave, but defendant indicated she wished to make a statement and that Miss Champlin should not wait for her. Defendant then told the officers that she had set the fire to kill herself, but had changed her mind, and that she had forgotten that Henderson was in the house until the fire was set. After she made this oral statement, Blazincic asked her if she would be willing to give a written statement. Defendant agreed and wrote a 6½-page statement detailing the circumstances leading up to and surrounding the fire. Defendant was provided with another meal at 5 p.m. and at 9 p.m., approximately 7½ hours after she agreed to prepare the written statement, defendant finished it and Blazincic drove home.

On cross-examination, Blazincic testified defendant was not advised of her *Miranda* rights on December 4, 1984. He stated that prior to his interview with defendant, a gasoline can had been found in a bedroom in her residence and he had information that defendant was behind in her mortgage payments. At the time of the interview, he therefore considered defendant a suspect in the arson and homicide investigations, although she was not the only suspect. The officer testified that after defendant admitted responsibility for the fire, he had probable cause to arrest her and denied telling defendant that James Henderson had been the source of her financial and alcohol problems and that he was better off dead. On December 6, 1984,

he called defendant to request she come to the station where he placed her under arrest.

Detective Charles Fagan testified he was also not in uniform during the interview and defendant was reminded seven or eight times that she could leave the station and would be provided with a ride home.

Defendant testified she was 37 years old and she has been in the United States for 21 years. She received 8 years of formal training in Finland and has since taken 20 hours of courses at Lake County College, including microbiology, accounting, management, and psychology in business and industry. She has been employed as a laboratory technician and supervisor. She testified that Detective Blazincic became upset with her and used a very strong voice in questioning her initial account of the fire. He told her what he believed had happened and stated she would be taken downstairs if she did not tell the truth, which she understood to mean she would be placed in jail. Blazincic then told her that James Henderson had been the cause of her drinking problem and promised her that the officers would help her cure her drinking problem and regain her position at Abbott Laboratories. She was not told she was free to leave, advised that she had a right to remain silent or stop the interview, or informed that she had a right to have an attorney present. On cross-examination, defendant stated the officers did not tell her to lie, but she based her statements on what she thought they would believe.

At the conclusion of the suppression hearing, the trial court found that defendant's written statement, which was replete with misspellings, grammatical errors and rambling statements, did not indicate the degree of intelligence one would expect from a person with defendant's background. The court then found that the interview became a custodial interrogation after defendant made verbal statements concerning her responsibility for the fire and suppressed defendant's written statement based on the officers' failure to advise her of her *Miranda* rights. This appeal followed.

■■ The State's sole contention on appeal is that defendant was not in custody at the time she made the written statement and the trial court therefore erred in suppressing it. Only statements made in the course of a custodial interrogation or where an individual's freedom has otherwise been significantly restrained must be preceded by *Miranda* warnings. (*People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785, *appeal denied* (1986), 111 Ill. 2d 593; *People v. Finklea* (1983), 119 Ill. App. 3d 448, 451, 456 N.E.2d 680; *People v. Kenning* (1982), 110 Ill. App. 3d 679, 683, 442 N.E.2d

1337.) The test for determining whether custody exists is not the presence or absence of probable cause (*People v. Newsome* (1983), 117 Ill. App. 3d 1005, 1008-09, 454 N.E.2d 353), or whether the person questioned is one whom the police suspect (*Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714). Rather, in determining whether the statement was made in a custodial setting, the court must look to the entire set of circumstances surrounding the questioning, with no single factor controlling, and then objectively evaluate whether a reasonable innocent man would have believed he was free to leave. *People v. Kilfoy* (1984), 122 Ill. App. 3d 276, 287, 466 N.E.2d 250, *appeal withdrawn* (1984), 101 Ill. 2d 549; *People v. Finklea* (1983), 119 Ill. App. 3d 448, 451-52, 456 N.E.2d 680; *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1028, 435 N.E.2d 226, *appeal denied* (1982), 91 Ill. 2d 578.

Relevant factors include the place of interrogation, any statements or nonverbal conduct indicating the accused is not free to leave, the extent of the knowledge of the police officers and the focus of their investigation, and the intentions of the officers. (*People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785, *appeal denied* (1986), 111 Ill. 2d 593; *People v. Berry* (1984), 123 Ill. App. 3d 1042, 1046, 463 N.E.2d 1044, *appeal denied* (1984), 101 Ill. 2d 568; *People v. Newsome* (1983), 117 Ill. App. 3d 1005, 1007-08, 454 N.E.2d 353.) The court should also look to the time, length, mood and mode of the interrogation, the number of police officers present and the presence or absence of friends or family of the accused, the manner in which the person questioned got to the place of interrogation, whether he was allowed to walk within and from the location of interrogation unaccompanied by police, and age, intelligence, and mental makeup of the accused. (*People v. Finklea* (1983), 119 Ill. App. 3d 448, 452, 456 N.E.2d 680; *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1028, 435 N.E.2d 226, *appeal denied* (1982), 91 Ill. 2d 578.) A reviewing court will not disturb the trial court's determination of a motion to suppress unless it is manifestly erroneous. *People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898; *People v. Williams* (1986), 140 Ill. App. 3d 116, 124, 488 N.E.2d 587.

In support of its contention that defendant's statement did not take place during a custodial interrogation, the State cites *California v. Beheler* (1983), 463 U.S. 1121, 77 L. Ed. 2d 1275, 103 S. Ct. 3517. In that case, the Supreme Court held that *Miranda* warnings are not required where the suspect is not placed under arrest, voluntarily comes to the police station, and is allowed to leave by the police after a brief interview. (463 U.S. 1121, 1125, 77 L. Ed. 2d 1275,

1279-80, 103 S. Ct. 3517, 3520.) The State argues that the facts in the present case parallel those considered in *Beheler* and warrant a similar result. However, the fact that the interview at the police station lasted only 30 minutes was stressed several times by the Supreme Court in *Beheler* and we consider that to be a marked distinction from the 12-hour interview to which the present defendant was subjected by the officers in the police station.

Here, defendant was accompanied to the police station by a friend after receiving a request from Detective Blazincic the day before. The interrogation itself took place in a small windowless interview room in the police station and the door to the room was open most of the day. Defendant was alone in the room with the two plainclothes officers throughout the day and the interrogation lasted almost 12 hours. Defendant arrived at the station at 9 a.m. and made an initial statement admitting her responsibility for the fire at approximately 10:30 a.m. or 11 a.m. She made a full verbal statement concerning the fire shortly after lunch and then prepared a written statement that she finished at approximately 9 p.m. The officers testified that defendant was not their sole suspect, that they informed defendant several times that she was free to leave and that they made no threats or promises to defendant. Defendant testified that the officers harassed her into making the statement, did not tell her she was free to leave, and threatened to take her downstairs if she did not tell the truth. After the interrogation, defendant was driven home by Detective Blazincic and was not placed under arrest until two days later. Although defendant arrived in the United States 21 years ago and has been trained as a laboratory technician and supervisor, the court found that her written statement did not indicate the degree of intelligence one would expect from a person with defendant's background.

■ The dispositive question is whether, based on the circumstances as a whole, a reasonable innocent person would have believed she was free to leave the police station after making verbal statements admitting her responsibility for an arson fire in which a death occurred. On review of the record, we cannot say that the trial court's determination that a reasonable innocent person would have believed she was under restraint was manifestly erroneous. Even if the police officers did repeatedly tell defendant she was free to leave, the circumstances surrounding the written statement support the trial court's finding of a custodial interrogation.

The record shows that defendant had been alone in the small interrogation room with the two officers for several hours at the time

they requested she make a written confession; that she was aware her friend had left the station and that she was dependent upon the police for transportation; that she did not leave for lunch or dinner but was provided with meals in the interrogation room; and that the interrogation did not end until she completed the written statement, even though that took 7½ hours. The evidence tends to suggest that the defendant became the focus of the officers' investigation once she made her verbal admissions and that a reasonable person would not have considered herself free to leave until she had acceded to the officers' request to give a written confession. The fact that defendant's written statement did not indicate a high degree of intelligence, when coupled with the extreme length of her solitary interrogation, also supports the trial court's conclusion that defendant did not believe she was free to leave. We do not regard the mere fact that defendant was not immediately placed under arrest as dispositive, in light of the fact that the officers had her written confession in their possession at the time, knew where she resided and arrested her two days later. We conclude that the trial court's suppression of defendant's written statement was not manifestly erroneous.

The State also suggests that, even if we affirm the trial court's suppression order, defendant's written confession may be used to impeach testimony by her at trial because the court's order was not based on traditional due process grounds. However, the State raises this issue for the first time in its reply brief and the issue is therefore deemed waived. *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 354, 478 N.E.2d 1132, *appeal denied* (1985), 108 Ill. 2d 585; *Dial v. Mihalic* (1982), 107 Ill. App. 3d 855, 864, 438 N.E.2d 546.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.