THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
WALLY URBAN, Defendant-Appellee.

Third District  No. 3—89—0334

Opinion filed March 27, 1990.

WOMBACHER, J., dissenting.

Gordon L. Lustfeldt, State's Attorney, of Watseka (Elizabeth A. Klug, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

A grand jury charged the defendant, Wally Urban, with unlawful possession of cannabis and with conspiracy to unlawfully deliver cannabis (hereinafter count II) (Ill. Rev. Stat. 1987, ch. 56½, par. 704(d); Ill. Rev. Stat. 1987, ch. 38, par. 8—2(a)). The defendant filed a motion to dismiss count II and a motion to suppress his confession. The trial court granted both motions. The State appeals.

According to the record, count II alleged that between February 1 and June 23, 1987, the defendant violated section 8—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 8—2(a)) by agreeing with two other men to effect a delivery of cannabis, in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)). The indictment also stated that he performed an act in furtherance of the agreement by purchasing cannabis from the men. The defendant moved to dismiss count II on the ground that it did not state an offense. The trial court granted the motion, finding that the defendant could not conspire to deliver cannabis to himself and that the conspiracy provision of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 709) preempted the general conspiracy provision of the Criminal Code.

At the hearing on the motion to suppress, Officer Donald King testified that on July 14, 1987, he and Officer David Burmeister went to the defendant's home. When the defendant came to the door, King told him that he had a grand jury subpoena for him. However, he did not give the defendant the subpoena at that time. Instead, he told him that there was a major narcotics investigation being conducted in the

area and advised him to come to the police station.

According to Officer King, about 30 minutes after the officers left, the defendant arrived at the station. After he was fingerprinted, photographed, and asked to give a personal history, the officers requested that he come into the police chief's office. King testified that he gave the defendant the subpoena, but told him that he was not under arrest and that he was free to leave at any time. Neither he nor Officer Burmeister gave the defendant *Miranda* warnings. King then told the defendant that his name had come up in a narcotics investigation but reiterated that he was not under arrest and was free to leave. However, if the defendant chose to cooperate, King said that he would inform the State's Attorney of his cooperation. The defendant then told the officers about some narcotics purchases he had made from two persons in the Watseka area. During the conversation, the defendant never asked if he could leave. After about one hour, the questioning ended and the defendant was allowed to leave.

Officer Burmeister's testimony was in general agreement with Officer King's. Following arguments, the trial court found that the police should have given *Miranda* warnings prior to questioning. Accordingly, the court granted the motion to suppress the confession.

The State first argues on appeal that the trial court erred in dismissing count II. It contends that the plain meaning of section 8—2 of the Criminal Code allows the defendant to be charged with conspiracy to deliver cannabis to himself. Additionally, it contends that the Cannabis Control Act does not preempt section 8—2. The defendant replies that the charge was barred by Wharton's Rule and, alternatively, that the Cannabis Control Act preempts section 8—2.

■ We shall first address the Wharton's Rule issue. The rule states that a person may not be prosecuted for conspiracy to commit an offense when the underlying substantive offense requires more than one actor for its commission. (See *Iannelli v. United States* (1975), 420 U.S. 770, 43 L. Ed. 2d 616, 95 S. Ct. 1284.) Thus, the rule would bar a conspiracy prosecution involving a buyer and seller of contraband, because the purchase of contraband necessarily involves at least two actors.

■ Here, the defendant was charged with conspiring to violate section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)) by agreeing to a delivery of cannabis with two other persons. The essential act alleged was his purchase of cannabis from them. Since a cannabis purchase always requires at least two actors, we find that count II was barred by Wharton's Rule. The trial court therefore properly dismissed it.

■ Although we have already found count II improper, we will address the preemption issue since it may arise in the future. We first note that as a general rule a specific statute should control a general one. (*People v. Taylor* (1974), 18 Ill. App. 3d 480, 309 N.E.2d 595.) The Cannabis Control Act prohibits conspiracies to deliver cannabis where the following factors are present: (1) the transaction involves more than 30 grams of a substance containing cannabis; (2) the defendant conspires with two or more other persons; and (3) the defendant either obtains something of value greater than $500 from the conspiracy, or he organizes, directs, or finances it. (Ill. Rev. Stat. 1987, ch. 56½, par. 709(b).) Consequently, it has been held that where the defendant has been charged with conspiracy to deliver more than 30 grams but no more than 500 grams of a substance containing cannabis, the Cannabis Control Act preempts section 8–2. *People v. Caryl* (1977), 54 Ill. App. 3d 537, 369 N.E.2d 926; *Taylor*, 18 Ill. App. 3d at 481-82, 309 N.E.2d at 596-97.

■ The instant defendant was charged with conspiracy to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis. (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d).) The facts pled in count II therefore constitute a conspiracy under section 9 of the Act. Since we agree with the *Caryl* and *Taylor* courts that in cases such as this preemption should apply, we find that count II did not state an offense. Accordingly, the trial court properly dismissed the charge on preemption grounds.

The State also argues that the trial court erred in suppressing the defendant's confession. The State contends that the officers were not required to give *Miranda* warnings because the defendant was not in custody at the time of his questioning.

■ Statements made in the course of custodial interrogation must be preceded by *Miranda* warnings. (*People v. Romano* (1985), 139 Ill. App. 3d 999, 487 N.E.2d 785.) In determining whether custody exists, the ultimate inquiry is whether there was a formal arrest or a significant restraint on the person's freedom of movement. (*Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711.) *Miranda* warnings are not required simply because the questioning took place at the police station or because the questioned person is a police suspect. (*Mathiason*, 429 U.S. at 495, 50 L. Ed. 2d at 719, 97 S. Ct. at 714.) The trial court's decision on a suppression motion will not be overturned unless it was manifestly erroneous. See *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628.

■ Applying the foregoing principles to this case, we find that the suppression order was manifestly erroneous. Although the defend-

ant was apparently a suspect at the time of questioning, that fact alone is not determinative. Since the officers' unrebutted testimony established that the defendant was free to leave at any time, he was not subject to a formal arrest or a significant restraint on his freedom of movement. Consequently, *Miranda* warnings were not required. We therefore reverse the suppression order and remand the cause for further proceedings consistent with this opinion.

The judgment of the circuit court of Iroquois County dismissing count II is affirmed. The judgment suppressing the confession is reversed, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

SCOTT, J., concurs.

JUSTICE WOMBACHER, dissenting:

I agree that count II of the complaint was barred by Wharton's Rule, I do not agree, however, that the trial court erred in suppressing the defendant's confession. Accordingly, I dissent from that portion of the opinion.

The crucial issue is whether the defendant was in custody at the time of his interrogation by the police. Simply put, the rule of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, requires the suppression of statements made by a defendant in response to custodial police interrogation unless preceded by a statement of basic constitutional rights and a waiver of those rights. In the instant case, the experienced trial judge resolved this issue in favor of the defendant, criticized the police conduct as a deliberate attempt to evade *Miranda* and ordered the suppression of the fruits of that interrogation. In order for this court to overturn the trial court's decision, this court must find the decision to be manifest error. *People v. Hagar* (1987), 160 Ill. App. 3d 370, 513 N.E.2d 628.

The majority opinion states, "[i]n determining whether custody exists, the ultimate inquiry is whether there was a formal arrest or a significant restraint on the person's freedom of movement" (196 Ill. App. 3d at 313, citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711). The majority, again citing *Mathiason*, then indicates that simply because an individual is a police suspect or is interrogated at a police station does not necessarily mean that the individual is in custody. Without any more analysis, the majority cavalierly finds that the trial judge's order was manifestly erroneous.

Research on the issue reveals that the question of whether an in-

dividual is "in custody" is not nearly as facile as the majority would have us believe. Instead of focusing on one or two factors, a "totality of the circumstances" analysis should be employed and an objective evaluation made to determine whether a reasonable innocent person would have believed that he was free to leave. (*People v. Smith* (1986), 150 Ill. App. 3d 524, 501 N.E.2d 1010.) The relevant factors listed by the court in *Smith* include the place of interrogation, any statements or nonverbal conduct indicating the accused is not free to leave, the extent of the knowledge of the police officers and the focus of their investigation and the intentions of the officers. *Smith*, 150 Ill. App. 3d at 528.

Applying these factors to the case at bar, two police officers went to the defendant's residence, supposedly to deliver a subpoena. However, instead of merely serving the subpoena on the defendant, the officers "advised" him to come to the police station to pick it up. Therefore, the defendant's appearance at the police station was not totally voluntary as that was the location at which he was told to come to receive his subpoena. It is interesting to note that the police could have both served the subpoena and questioned the defendant at his residence, but elected to have the defendant come to the station instead.

Once the defendant arrived at the station, he was immediately fingerprinted, photographed and had a personal history taken. This is the identical procedure used following the arrest of an individual. Thus, while the police officers verbally told the defendant that he was not in custody, the circumstances clearly negated the officers' statements. See, *e.g., People v. Berry* (1984), 123 Ill. App. 3d 1042, 463 N.E.2d 1044.

As to the focus of the investigation and the knowledge and intent of the police, it is apparent that the defendant was the focus of the investigation. The police officers were serving him with a grand jury subpoena. Had the officers believed that the defendant was one who would merely provide testimony as to another's activities, they would have left the subpoena with the defendant. If they had questions, they could have questioned him at his residence rather than compelled him to come to the police station. It is apparent that the police suspected the defendant and wanted to get him into an environment more conducive to eliciting incriminating information.

When the objective elements are viewed with the reasonable inferences of an innocent person, it is apparent that the defendant was in custody when he was interrogated. The defendant was coerced into appearing at the police station. After his arrival at the police station,

he underwent the same treatment an arrested individual would receive. He then was questioned for nearly one hour by two police officers. The room where he was questioned is located on the second floor of the police station. The door was closed during his interrogation. In sum, it is my opinion that the defendant was in custody at the time of the interrogation and therefore should have been afforded *Miranda* warnings. I would affirm the trial court's decision.